**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | CR. NO. 24-CR-535 (JEB) |
| ZAID  MAHDAWI | ) | |
| _____ | ) | |

<u>**MEMORANDUM IN AID OF SENTENCING**</u>

As the first-born son of immigrant parents, Zaid Mahdawi felt pressure to do well and not disappoint his parents.  He did well in school and in sports.  He helped his father at the family restaurant.  While he was born and raised in the quiet suburbs of Richmond, Virginia, he was raised with the love of his parent's home country of Jordan, where he was sent to learn Arabic and Jordanian culture.

The conflict in the Middle East is not new to those familiar with the area.  When the Gaza-Israel war began in October 2023, it sparked an already growing crisis to a new level.  Passions have grown on both sides of the war.  Here, feeling that voices needed to be heard, protests and demonstrations occurred in several cities and of course, here in Washington, D.C., the seat of federal government.

Mr. Mahdawi attended a lawfully permitted demonstration on July 24, 2024.  Unfortunately, the demonstration got out of control.  Mr. Mahdawi, caught up in frustration about the war and the passions of the demonstration, spray painted the Columbus Circle Fountain.  Mr. Mahdawi knows that his actions were not a proper way to express himself.  He is remorseful for his conduct and the negative attention it has brought to him and his family.  He lost a job as a result of pleading guilty in this case.  He will always be concerned about the additional scrutiny his will receive in light of Muslim individuals who have expressed sentiments

1

contrary to the administration.  Based on the nature and circumstances of the offense, Mr.
Madhawi's background, his acceptance of responsibility, and the relevant sentencing factors
pursuant to 18 U.S.C. § 3553(a), the defense respectfully requests a sentence of probation, which
is fair and reasonable.

## Case Background

On October 2, 2024, a Criminal Complaint was filed against Mr. Mahdawi charging him
with Destruction of Government Property, less than $1,000 in violation of 18 U.S.C. § 1361.  He
was arrested on October 4th and was released on his personal recognizance.  A one-count
Information was filed against him in November and approximately two months later, Mr.
Mahdawi pled guilty to Destruction of Property.  Mr. Mahdawi accepts responsibility for the
offense and did not put the government to its burden of proof at trial.

## Sentencing Law

The era of binding guidelines ended twenty years ago, when the Supreme Court held that
"the Federal Sentencing Reform Act of 1984…ma[de] the Guidelines effectively **advisory.**"
*United States v. Booker*, 543 U.S. 220, 245 (2005) (emphasis added).  Under *Booker*, the
"district courts, while not bound to apply the Guidelines, must consult those Guidelines and
take them into account when sentencing."  *Id.* at 264 (citing *See* 18 U.S.C. §§ 3553(a)(4), (5)).
While holding that district courts should still consider the Guideline calculations and ranges for
sentencing purposes, the Supreme Court in *Booker* held that courts must consider all the
purposes of sentencing set forth in 18 U.S.C. § 3553(a).  Overall, in light of *Booker*, courts must
treat the Guidelines as one among several of the sentencing factors.

18 U.S.C. § 3553(a) provides that the Court must consider:

(1) the nature and circumstances of the offense and the history and characteristics of

the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines— (i)issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; …

(5) any pertinent policy statement— …

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Several years after *Booker*, the Supreme Court made clear that the "Court's overarching duty" is to "'impose a sentence sufficient, but not greater than necessary,'" *Pepper v. United States*, 562 U.S. 476, 493 (2011) (quoting 18 U.S.C. § 3553(a)), to comply with "the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation," *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017); *see also* 18 U.S.C. § 3553(a)(2). In addition, the sentencing court may consider any "information concerning the background, character, and

conduct" of the defendant, including age, educational and vocational skills, mental and emotional conditions, and lack of guidance as a youth. 18 U.S.C. § 3661.

Congress has further provided that:

[t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, *recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation*.

18 U.S.C. § 3582(a) (emphasis added). With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with the purposes [of sentencing]." *Id*. § 3553(a) (emphasis added).

## **Argument**

For the following reasons, a sentence of probation is the only sentence that is not greater than necessary, yet sufficient, for the purposes of sentencing.

## I.    The Nature and Circumstances of the Offense

The offense conduct is detailed in the Statement of Facts and the Final Presentence Investigation Report. In short, Mr. Mahdawi attended a lawfully permitted demonstration on the National Mall. The permit was later revoked.  Mr. Mahdawi was not the permit holder or organizer of the event. He and several others congregated at Columbus Circle and climbed the monument and spray painted the fountain. Mr. Mahdawi is remorseful for his conduct.

## II.    Mr. Mahdawi's History and Characteristics

Mr. Mahdawi grew up in the suburbs of Richmond, VA in Henrico.  He lives in the same house he was raised in with his parents and siblings. His upbringing was simple. He did well in high school and took several science and Advanced Placement courses. His parents provided him what he needed. As an adult, he contributes to the household by paying a large portion of

the rent and providing money for food.

Over the summers, his family would take a trip to Jordan to see extended family.  Mr. Mahdawi enjoyed the opportunity to connect with his cousins and play soccer.  When he was around 12 years old, his mother and siblings moved to Jordan for three years.  His parents wanted their children to be fully immersed in the culture and learn Arabic.

Mr. Mahdawi graduated from Godwin High School in Richmond, VA.  He later obtained an Associate's Degree in Business Administration.  He is pursuing his A+ certification and hopes to obtain his Network+ (Plus) and Security+ (Plus) Certifications.  Working as an independent contractor at computer and cellphone repair company, gave him the opportunity to develop his interest in computer science and business.  Unfortunately, he pled guilty in this case, he lost his job and main source of income.

## III.     The Purpose of Sentencing Will be Accomplished with a Sentence of Probation.

When sentencing a defendant, the Court must treat the Guidelines "as one factor among several" that § 3553(a) requires the Court to consider.  *Kimbrough v. United States*, 552 U.S. 85, 90 (2007).  Because the Guidelines merely reflect a "wholesale" view "rough[ly] approximat[ing] . . . sentences that might achieve § 3553(a)'s objectives," *Booker* and § 3553(a) require the Court to tailor an individualized sentence that actually does achieve § 3553(a)'s objectives in the case before it.  *Rita*, 551 U.S. at 348, 350.  This Court may not presume that a Guideline sentence is reasonable and should, instead, consider whether or not the applicable Guidelines sentence properly reflects § 3553(a) considerations and whether "the case warrants a different sentence regardless."  *Id.* at 351.  Indeed, "it remains the judge's duty to tailor every sentencing to the case and defendant at hand," regardless of the guidelines range.  *United States v. Sabillon-Umana*, 772 F.3d 1328, 1330 (10th Cir. 2014) (Gorsuch, J.).

*The Kinds of Sentences Available and the Sentencing Range Established*

Since Mr. Mahdawi pled guilty to a misdemeanor, he is eligible for a sentence of probation for up to five years.  18 USC § 3561(c)(2). The Probation Office has also determined that because the applicable guideline range is in Zone A, a sentence of imprisonment is not required.  (PSR ¶ 95).

a.    *The Kinds of Sentence and the Sentencing Range Established*

The Probation Office calculated an advisory guideline range of 0 to 6 months based on criminal history category of I and a total offense level of 8.  (PSR ¶ 95).  In the Final Presentence Investigation Report, consistent with the defense's guideline calculation, the Probation Office determined that the base offense level was 8 and two additional levels could be added for value over $6,500 (+2) and two additional levels could be added for the custody of  that the cross-reference did not apply.  (PSR, p. 18).  Adjusting for acceptance of responsibility and zero point offender, the total offense level was 8.

According to the Sentencing Commission's Interactive Data Analyzer over the last 9 years, 100% of people sentenced under guideline 2B1.5, who fell into sentencing zone A, were sentenced to probation only.



b. _Any Pertinent Policy Statement_

"The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender…." 28 U.S.C. § 994(j).  In light of Mr. Mahdawi's first offender status, a prison sentence would not be appropriate here.  The Sentencing Commission has noted that offenders who fall into Criminal History Category I are less likely to receive a straight prison sentence. [1]

---

[1] _See_ U.S. Sent'g Comm'n, _Recidivism and the "First Offender,"_ (May 2004) p. 10, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf (last accessed on March 30, 2025).

    *c.*  *A Sentence of Probation Would Provide Just Punishment and Protect the Public.*

18 U.S.C. § 3553(a)(2)(A) and (C) provide that the Court must assess "the need for the sentence imposed— . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and "to protect the public from further crimes of the defendant." A sentence of probation would provide just punishment for the offense and protect the public. The purposes of sentencing can be accomplished with Mr. Mahdawi remaining in society, being on probation and complying with any further conditions that the Court deems appropriate. While "custodial sentences are qualitatively more severe than probationary sentences of equivalent terms," "[o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." *Gall*, 552 U.S. at 48. "A sentence of probation rather than incarceration can work to promote the sentencing goal of respect for the law by illustrating a rejection of the view that the law is merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *United States v. Bennett*, No. 8:07CR235, 2008 U.S. Dist. LEXIS 45302, at *12 (D. Neb. May 30, 2008) (citing *Gall*, 552 U.S. at 99).

A sentence of probation itself is a "'substantial restriction of freedom.'" *Gall*, 552 U.S. at 44 (citation omitted). As the Supreme Court has explained:

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. *See United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled' " (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987))). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their

8

> probation officer, permit unannounced visits to their homes, refrain
> from associating with any person convicted of a felony, and refrain
> from excessive drinking. USSG § 5B1.3. Most probationers are
> also subject to individual "special conditions" imposed by the
> court.

*Id*. at 48 (footnote omitted). Hence, the public will be protected by Mr. Mahdawi being supervised on probation.

> d. *A Sentence of Probation Would Provide Adequate Deterrence*

18 U.S.C. § 3553(a)(2)(B) provides that the Court must assess "the need for the sentence imposed— . . . to afford adequate deterrence." Mr. Mahdawi has lost a job which he held for approximately three years. He may continue to face challenges obtaining employment with a federal conviction. In addition, a simple online search of his name produces several news reports and press releases on this case. Those factors are adequate deterrence. *See, e.g., United States v. Olis*, 2006 WL 2716048, at *13 (S.D. Tex. Sept. 22, 2006) (granting substantial variance in part because "the attendant negative publicity, the loss of his job and accounting and law licenses, and the need to provide support for his family will provide adequate deterrence against any potential future criminal conduct."). No term of imprisonment is necessary to prevent Mr. Mahdawi from committing similar crimes in the future.

> e. *A Sentence of Probation Would Provide Mr. Mahdawi with Treatment.*

18 U.S.C. § 3553(a)(2)(D) provides that the Court must assess "the need for the sentence imposed— . . . to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner." A sentence of imprisonment would impede Mr. Mahdawi's need to work and contribute to the household.

"Any term of imprisonment in this case would be counter effective by depriving society of the contributions of the Defendant who . . . understands the consequences of his criminal

conduct and is doing everything in his power to forge a new life."  *Gall*, 552 U.S. at 44 (citation omitted) (quoting district court).  As a result, Mr. Mahdawi requests a sentence of probation. The requested sentence is not greater than necessary, and is sufficient for the purposes of sentencing.

### Conclusion

For the foregoing reasons, and for any other reasons set forth at the sentencing hearing, a sentence of probation sufficiently addresses Mr. Mahdawi's conduct as well as other factors pursuant to 18 U.S.C. § 3553(a).

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Ubong E. Akpan
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

10